OPINION OF THE COURT
David H. Brind, J.
The defendant is charged with criminal possession of a controlled substance in the seventh degree, a class A misdemeanor in violation of section 220.03 of the Penal Law and endangering the welfare of a child, a class A misdemeanor in *260 violation of section 260.10 of the Penal Law. Defendant moves to dismiss both charges on the following grounds:
1. There exists a jurisdictional and a legal impediment to conviction of this defendant for the offense charged.
2. This is the first time that the Ontario County District Attorney’s office has prosecuted a woman under Penal Law § 260.10 (1) on the basis of alleged acts committed while the alleged victim was in útero.
3. That prosecution of this defendant under Penal Law § 260.10 (1) contravenes the plain language of the statute and the legislative intent of the statute.
4. That this prosecution violates the defendant’s fundamental right to due process of law under the Federal and State Constitutions and statutory rights under the New York Penal Law.
5. That this prosecution violates the defendant’s fundamental rights to privacy and to equal protection of the law.
6. That this prosecution violates the Federal and State prohibitions against cruel and unusual punishment in that it seeks to punish defendant for her alleged status as a drug addict.
7. That dismissal is required in the furtherance of justice.
Upon examination of the information/complaint filed with the court on the charge of criminal possession of a controlled substance, seventh degree, hearing the arguments of counsel and reading and filing the memoranda, the court determines that the accusatory instrument meets the requirements of CPL 100.15 and 100.40 and that the motion to dismiss is without merit and must be denied.
As to the dismissal of the charge of endangering the welfare of a child, the court notes at the outset that this is an issue of first impression in New York even though this statute has ancient roots of over 100 years. (L 1876, ch 122, § 4.)
The accusatory instrument alleges: "that on or about March 4, 1991, in the City of Geneva, Ontario County, New York, the Defendant did possess and did smoke a controlled substance known as cocaine, and by the Defendant’s actions, she did place her newborn child in a manner that was likely to be injurious to the physical welfare of Lacreesha Morabito, who is the child of the Defendant; by the Defendant’s actions of smoking cocaine, she did induce labor causing Lacreesha to be born premature and with cocaine in the blood system of the newborn.”
*261 Section 260.10 (1) of the Penal Law under which the defendant is charged states:
"A person is guilty of endangering the welfare of a child when:
"1. He knowingly acts in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health”.
CASE LAW
Our several sister States, however, have had occasion to examine similar statutes. In Commonwealth v Pelligrini, the Superior Court of Plymouth, Massachusetts (Oct. 15, 1990), examined a case where after the defendant gave birth to a child, tests performed on the infant revealed the presence of cocaine. The Commonwealth alleged that the presence of cocaine in the infant was due to the ingestion of cocaine by the mother while she was pregnant and that the cocaine was transferred to the fetus through the placenta. The court dismissed the indictment for distributing cocaine to a person under 18, and further found that even if the drafter of the penal statute intended that it apply to the ingestion of cocaine by a pregnant woman, such application is unconstitutional. The court made this determination on the basis of the right to privacy guaranteed by the United States Constitution and the Massachusetts Declaration of Rights.
In the case of Ohio v Gray (Court of Common Pleas, Lucas County, Ohio, July 13, 1989), the court stated: "This Court finds, however, that the interpretation of [the statute] to include the inutero transfer of cocaine from the mother to her fetus is an inappropriate exercise of judicial power and second, that due process principles prevent this Court from applying [the statute] to the circumstances of this case.” The court thereupon dismissed the case. The defendant had been indicted by the Grand Jury on child endangering under the Ohio Revised Code. The defendant was charged with violating the duty of care, protection and support of her child by ingestion of cocaine during the third trimester of her pregnancy. The prosecution argued that the case involved not a redefinition of the term child to include fetus but rather conduct which affects the child after it is born. The court first noted that all ambiguities and reasonable doubts in interpret *262 ing criminal statutes are to be resolved in favor of the accused. The court refused to interpret the word "child” in the statute to include "fetus” and found that the duty under the criminal statute does not arise until a live child is born of the pregnancy.
The California Court of Appeals in People v Reyes (75 Cal App 3d 214, 218, 141 Cal Rptr 912, 913 [1977]) held that the word "child”, as used in that statute, did not include "fetus” and that when the Legislature has intended to include a fetus or an unborn child within the provisions of a penal statute, it is done so expressly, that " 'the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute.’ ”
The court then unanimously ordered the dismissal of the case in which a pregnant woman continued using heroin during the final two months of pregnancy despite warnings of a public health nurse that such conduct could endanger her unborn child.
The Family Court of Stark County, Ohio, in Matter of State v Andrews (June 19, 1989), similarly dismissed a case based upon an allegation that a pregnant woman ingested cocaine during the time period in which the fetus had reached viability and even though such activity created a substantial risk to the health or safety of the child after it is born. The court stated that the group of people who are the target for criminal liabilities under that child endangering statute are people who are either parents of a child or who have been delegated parental type responsibility. The court stated that the child endangering statute had been amended three times, and the Legislature did not address the issue of prenatal negligence or future endangerment.
Judge Edwards summed her ruling as follows: "Society’s legitimate concern over the increasing cocaine problem in this community and its eventual effects on a future generation is supported by a growing body of medical information. But the question of whether or not the State should intervene on the activities of a pregnant woman, when it should intervene (under what circumstances and what point in the pregnancy), how it should intervene, what penalty should apply, what defenses should be available to a pregnant woman (i.e., seeking treatment) and who should be responsible for reporting such activity and when, are complex legal and social questions that can only be debated and fully considered by the legisla *263 turc. The Court’s function is to interpret and apply the statutory law and the legislature’s function is to enact legislation that responds to the changing problems and knowledge of a society.”
The court also made the following observation: "Certainly if the statute, in its present form, were to be applied to cases in which a pregnant woman carrying a viable fetus does some act that results in harm to that fetus or to a child born alive, it could include prosecution for failure to get prenatal care and excessive ingestion of alcohol as well as illegal drug use.” The court concluded: "Courts have no authority to create crimes. It is therefore, up to the [Legislature] to criminalize the ingestion of cocaine during pregnancy when such ingestion results in harm to the subsequently born child.”
The Supreme Court of Wyoming in State v Osmus (73 Wyo 183, 276 P2d 469) dismissed a similar charge on the ground that that State’s child abuse statute was not intended to apply to unborn children.
STATUTORY CONSTRUCTION
Section 5.00 of the Penal Law states, "The general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law.” (See, People v Ditta, 52 NY2d 657.)
The Appellate Division in State v Garlick Parkside Mem. Chapels (30 AD2d 143, 148, affd 23 NY2d 754) held that the test in determining the validity of a penal statute was whether a reasonable man subject to the statute would be informed of what is required of him, and the test is satisfied if the statutory words " ' " have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden” ’ ”. Similarly, in the case of People v Darryl M. (123 Misc 2d 723, 726), the court held that penal statutes are to be interpreted in accordance with their natural, plain meaning, and fair import of their terms.
This court in People v McDonald (99 Misc 2d 263, 265) held that a "statute may not be extended by implication to cover cases not clearly within its terms”. (Emphasis supplied.) Further, in People v A & C Trucking Co. (88 Misc 2d 988, 994), this court held that a court may not assume the role of "super *264 Legislature.” The New York Court of Appeals in People v Illardo (48 NY2d 408, 413-414) makes the following most cogent observations: "Indeed, the constitutional requisite that a statute be 'informative on its face’ * * * serves not only to assure that citizens can conform their conduct to the dictates of the law but, equally important, to guide those who must administer the law * * *. As common sense and experience both tell us, unless by its terms a law is clear and positive, it leaves virtually unfettered discretion in the hands of law enforcement officials and thereby may encourage arbitrary and discriminatory administration.”
Again, New York Court of Appeals in People v Bergerson (17 NY2d 398, 403-404) in interpreting the intent of the child endangering statute stated: "The test to be applied was recently stated by this court: 'The test is whether a reasonable man subject to the statute would be informed of the nature of the offense prohibited and what is required of him. Such warning must be unequivocal but this requirement does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.’ (People v. Byron, 17 N Y 2d 64, 67.)”
LEGISLATIVE INTENT
Furthermore, when our Legislature enacts laws concerning unborn children, it says so explicitly. (See, Penal Law § 125.00; RPAPL 928, 967, 1531, 1753, 1764; Domestic Relations Law § 81; SCPA 1408.)
The statute herein restricts its application to children in being. The legislative intent can be discerned from the words themselves: "likely to be injurious to * * * a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health”. (Penal Law §260.10 [1]; emphasis supplied.)
It is readily apparent that "such child” who is the subject of this legislation and who is to be protected from various acts and dangerous occupations cannot be one yet to be born. Clearly, the Legislature has thus excluded unborn children from this statute.
The dictionary definitions of "child” have been constant throughout the period of this legislation (1876-1990), and which do not, after a fair reading, give one a reason to believe that the statute applies to endangering unborn children.
*265 1873 — "an infant, a very young person, a son or daughter.” (Comprehensive Dictionary of the English Language [J. Worcster].)
1908 — "a son or daughter, male or female, descendant in the first degree, immediate progeny of human parents.” (Reference History Edition of Webster’s International Dictionary.)
1913 — "an offspring of either sex, young person of any age less than maturity.” (New Standard Dictionary of the English Language.)
1933 — "a person between infancy and youth.” (Funk and Wagnalls Desk Standard Dictionary of the English Language.)
1961 — "baby; an infant.” (Webster’s New World Dictionary —Elementary Edition.)
1966 — "boy or girl; son or daughter.” (The Random House Dictionary.)
1976 — "any person between birth and puberty.” (American Heritage Dictionary of the English Language.)
1988 — "a young person of either sex; adolescent; a person between infancy and youth.” (Webster’s Dictionary.)
Lastly, the court notes two New York State Supreme Court decisions, both of which adopt the following statement concerning this statute.
"The section is basically intended to enhance the Family Court Act provisions controlling the acts of adults which are likely to result in neglect or delinquency of children where Family Court proceedings would be inappropriate for that purpose (see, Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 260.10, p 408).” (People v Suarez, 133 Misc 2d 762, 763 [emphasis supplied]; People v Villacis, 143 Misc 2d 568, 570.)
Based on a reading of section 260.10 (1) of the Penal Law as to determine its fair import and legislative intent and the court decisions cited in this opinion, the court finds that the provisions of section 260.10 (1) as presently constituted do not apply to the case at bar. To hold otherwise would deny the defendant of her constitutional right to due process as guaranteed by both Federal and State Constitutions. (Papachristou v City of Jacksonville, 405 US 156, 162.) Therefore, the information/complaint charging defendant with endangering the welfare of a child is dismissed.