2006-NMCA-068

137 P.3d 1195

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Cynthia MARTINEZ, a/k/a Cynthia
Navarrette, Defendant–
Appellant.**

**No. 24,601.**

Court of Appeals of New Mexico.

April 3, 2006.

Certiorari Granted, No. 29,775,
June 2, 2006.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Public Defender, Santa Fe, NM, for Appellant.

## OPINION

ROBINSON, Judge.

{1} Cynthia Martinez (Defendant) appeals her conviction, pursuant to a conditional plea, for felony child abuse, contrary to NMSA 1978, Section 30–6–1(D) (2005). The issue on appeal is whether the State, under current law, can prosecute a mother for child abuse when the mother uses cocaine during her pregnancy. We conclude that Section 30–6–1(D) does not apply to Defendant's conduct and we therefore reverse.

## I. BACKGROUND

{2} The stipulated facts indicate that, on January 12, 2003, Defendant's daughter (Child) was born at Lea Regional Hospital in Hobbs, New Mexico. Child was delivered via caesarian section, due to a breech presentation, and Child was thirty-six weeks gestational age at the time of delivery. Doctor Reddy noted in the medical records that Child was borderline small for her gestational age. He further noted that "[i]f the baby continues to have increasing drug withdrawal, to do drug screening on the baby as the mother is a drug addict." Child's urine was tested approximately forty-eight hours after birth and showed a cocaine level greater than 300 ng/ml, which was flagged for a high level of cocaine.

{3} Defendant received prenatal care at the New Mexico Health Department. Defendant stated she was verbally advised and received pamphlets from her doctor, advising her that the use of drugs or alcohol during her pregnancy would be harmful to her unborn baby. On December 9, 2002, Defendant told the Health Department staff that she ingested all the crack cocaine she could get and drank alcohol all day.

{4} On March 10, 2003, Defendant was contacted by Detective Michael Weiss of the Hobbs Police Department. Defendant told him that she used crack cocaine at several locations in Hobbs and had done so two days prior to the birth of Child. The State charged Defendant with felony child abuse for "knowingly, intentionally or negligently, and without justifiable cause, causing or permitting ... [C]hild to be ... placed in a situation that may endanger ... [C]hild's life or health[.]" § 30–6–1(D)(1).

## II. DISCUSSION

### A. Standard of Review

■ {5} We must address whether the State, under current New Mexico law, has the authority to charge Defendant with child abuse. Specifically, this Court must determine whether the Legislature intended a viable fetus to be considered a human being in the context of the child abuse statute. Resolution of this issue requires us to interpret and ascertain the Legislature's intent in drafting the child abuse statute. *See* § 30–6–1. Statutory interpretation is a question that this Court reviews de novo. *State v. Fairbanks,* 2004–NMCA–005, ¶ 5, 134 N.M. 783, 82 P.3d 954. In construing a statute, the primary goal of an appellate court is to ascertain the intent of the Legislature by giving effect to the plain meaning of the words of the statute, unless that would lead to an absurd or unreasonable result. "We refrain from further interpretation where the language is clear and unambiguous." *Id.* ¶ 6; *State v. Marshall,* 2004–NMCA–104, ¶ 7, 136 N.M. 240, 96 P.3d 801. However, in applying the plain meaning rule, this Court must exercise caution because "[i]ts beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning." *State ex rel. Helman v. Gallegos,* 117 N.M. 346, 353, 871 P.2d 1352, 1359. Furthermore, "[w]hen attempting to unravel a statutory meaning[,] we begin with the presumption that the statutory scheme is comprehensive." *Sims v. Sims,* 1996–NMSC–078, ¶ 21, 122 N.M. 618, 930 P.2d 153. Thus, in considering the statute's function in relation to related statutes passed by the Legislature, "[w]henever possible, ... we must read different legislative enactments as harmonious instead of as contradicting one another." *State v. Muniz,* 2003–NMSC–021, ¶ 14, 134 N.M. 152, 74 P.3d 86 (internal quotation marks and citation omitted).

### B. Interpretation of the Child Abuse Statute

■ {6} Here, the relevant portion of the child abuse statute provides that "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be ... placed in a situation that may endanger the child's life or health[.]" § 30–6–1(D). A child is defined as "a person who is less than eighteen years of age." § 30–6–1(A)(1). Review of the criminal code, NMSA 1978, Sections 30–1–1 to 30–28–3 (1963, as amended through 2005) defines a "person" as "any human being or legal entity[.]" § 30–1–12(E).

{7} When the Legislature defined a "person" as a human being or legal entity, it did not include fetuses within the meaning of a "human being." *State v. Willis,* 98 N.M. 771, 773, 652 P.2d 1222, 1224 (Ct.App.1982), illustrates the point. In *Willis,* we held that an unborn viable fetus is not a "human being" within the meaning of the vehicular homicide statute. The Court reasoned that since the Legislature first enacted homicide statutes, in which the killing of a human being and the killing of an unborn infant child were separately addressed, "it does not follow that the Legislature meant to include viable fetus within the definition of human being without specifically making provision therefor." *Id.*

{8} Since *Willis,* the Legislature has enacted statutes that demonstrate its intention to distinguish an unborn viable fetus from "human being." *See* NMSA 1978, § 30–3–7 (2006) (stating that "[i]njury to [a] pregnant woman consists of a person other than the woman injuring a pregnant woman in the commission of a felony causing her to suffer a miscarriage or stillbirth as a result of that injury" (§ 30–3–7(A)), defining "miscarriage" as "the interruption of the normal development of the fetus, other than by a live birth" (§ 30–3–7(B)(1)), and defining "stillbirth" as "the death of a fetus prior to the complete expulsion or extraction from its mother" (§ 30–3–7(B)(2))); *see also* NMSA 1978, § 66–8–101.1 (1985) (injury to pregnant woman by vehicle). These provisions indicate that when the Legislature intends to include fetuses within the protection of a criminal statute, it does so specifically.

{9} This Court may not expand the meaning of "human being" to include an unborn viable fetus because the power to define crimes and to establish criminal penalties is exclusively a legislative function. *Santillanes v. State,* 115 N.M. 215, 849 P.2d 358 (1993); *see State v. Thompson,* 57 N.M. 459, 465, 260 P.2d 370, 374 (1953) (stating that "[b]y the constitution of the [S]tate the [L]egislature is invested with plenary legislative power, and the defining of crime and prescribing punishment therefor are legislative functions"); *see also* N.M. Const. art. III, § 1 (providing for division of powers of government between legislative, judicial, and executive branches).

{10} Other jurisdictions with similar child abuse statutes have concluded that such statutes do not apply to an unborn fetus. *See People v. Morabito,* 151 Misc.2d 259, 580 N.Y.S.2d 843, 846–47 (N.Y.City Ct.1992) (holding that mother could not be charged with criminal endangering the welfare of her child based upon prenatal acts of smoking cocaine); *State v. Gray,* 62 Ohio St.3d 514, 584 N.E.2d 710, 713 (1992) (holding that mother may not be prosecuted criminally for child endangerment for prenatal substance abuse); *Reinesto v. Superior Court of Ariz.,* 182 Ariz. 190, 894 P.2d 733, 737 (Ct.App. 1995) (holding that mother could not be prosecuted under child abuse statute for prenatal use of heroin); *State v. Dunn,* 82 Wash.App. 122, 916 P.2d 952, 956 (1996) (dismissing charge of second-degree criminal mistreatment of a child, holding that a fetus was not a child within the meaning of criminal mistreatment statute where mother continued to ingest cocaine while pregnant); *State v. Deborah J.Z.,* 228 Wis.2d 468, 596 N.W.2d 490, 496 (Ct.App.1999) (holding that fetus was not a human being for purposes of attempted first-degree intentional homicide and first-degree reckless injury statutes).

## C. Due Process

{11} Accepting the State's interpretation of Section 30–6–1 to include a fetus would offend Defendant's due process rights. Since we have concluded that the statutory definition of "human being" does not include a fetus, Defendant could not have reasonably known that her conduct was criminal. *See State v. Marchiondo,* 85 N.M. 627, 629, 515 P.2d 146, 148 (Ct.App.1973) (stating that "[a] statute violates due process if it ... 'is so vague that persons of common intelligence must necessarily guess at its meaning'" (quoting *State v. Orzen,* 83 N.M. 458, 493 P.2d 768 (Ct.App.1972))); *see also State v. Collins,* 80 N.M. 499, 502, 458 P.2d 225, 228 (1969) (stating that "[p]enal statutes are strictly construed and should be of sufficient certainty so that a person will know his act is criminal when he does it"). Additionally, "penal statutes must be strictly construed, and any doubts about their construction must be resolved in favor of lenity." *State v. Leiding,* 112 N.M. 143, 145, 812 P.2d 797, 799 (Ct.App.1991). Other states confronted with similar issues have come to the same conclusion. *See State v. Luster,* 204 Ga.App. 156, 419 S.E.2d 32, 34 (1992) (stating that mother could not have known that use of illegal drugs that affected fetus could subject her to criminal prosecution); *Reinesto,* 894 P.2d at 736 (reasoning that statutory reference to a child does not include a fetus, mother could not reasonably have known that she could be prosecuted for child abuse because of her prenatal conduct); *Morabito,* 580 N.Y.S.2d at 846 (stating that to construe penal statutes strictly because a reasonable person would have to be informed of the nature of the

offense); *Collins v. State*, 890 S.W.2d 893, 898 (Tex.App.1994) (concluding that statute did not give mother sufficient notice of criminal nature of her substance abuse, and thus her prosecution on this basis violated due process).

{12} Applying the ordinary meaning and legislative history of the criminal code leads us to conclude that Section 30–6–1(D) does not refer to Mother's conduct in this particular case. To expand the ordinary meaning of this statute would deny Defendant reasonable notice that her actions were criminal, thereby, violating her due process rights.

**CONCLUSION**

{13} For the reasons stated, we hold that the Legislature did not intend for a viable fetus to be included within the statutory definition of a child for the purposes of the child abuse statute. We therefore reverse the district court's ruling denying Defendant's motion to dismiss the charge of child abuse, and remand for further proceedings consistent with this opinion.

{14} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and MICHAEL E. VIGIL, Judge.