# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-047**

**Filing Date: February 4, 2021**

**No. A-1-CA-38071**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ANTHONY C. SENA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Certiorari Granted, August 6, 2021, No. S-1-SC-38713.  Released for Publication October 12, 2021.

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Anthony Sena entered a conditional plea to one count of child solicitation by electronic communication device (child solicitation), a third-degree felony, contrary to NMSA 1978, Section 30-37-3.2(C)(1) (2007), for conduct committed in October 2015,[1] and appeals the length and conditions of parole that were part of his sentence. Defendant contends that he should not be sentenced pursuant to the sex

---

[1]Defendant was also charged with resisting, evading, or obstructing a police officer, contrary to NMSA 1978, Section 30-22-1(B) (1981), which the State later dismissed.

offender parole statute, NMSA 1978, § 31-21-10.1 (2007), because the statute was not effectively amended in 2007 to include the crime of child solicitation. For the reasons that follow, we reverse the district court's order sentencing Defendant to parole pursuant to the sex offender parole statute rather than pursuant to the otherwise applicable general parole statute, NMSA 1978, § 31-21-10(D) (2009).

**BACKGROUND**

**{2}** Although only the sex offender parole statute is directly at issue in this case, our analysis is informed by the history of the related amendments made to the list of registrable offenses under the Sex Offender Registration and Notification Act (SORNA), NMSA 1978, § 29-11A-3(I) (2013). Therefore, we discuss the relevant history of both statutes. Our analysis considers (1) two bills passed during and enacted following the 2007 legislative session that both amended the sex offender parole statute and the list of registrable sex offenses under SORNA; (2) the compilation history of these statutes; and (3) our previous interpretation of conflicting portions of these 2007 bills in *State v. Ho*, 2014-NMCA-038, 321 P.3d 147.

**2007 Amendments to the Sex Offender Parole and SORNA Statutes**

**{3}** In 2007, the Legislature passed two bills that each amended, in relevant part, the sex offender parole statute,[2] § 31-21-10.1, and the list of registrable sex offenses under SORNA, § 29-11A-3(I). These two bills, Senate Bill (SB) 735 and SB 528, were introduced in the Senate within a week of each other and passed by the Senate within three days of each other; the bills were passed by the House of Representatives on the same day, and both bills were signed by the Governor on the same day. *Ho*, 2014-NMCA-038, ¶ 3.

**{4}** The earlier-enacted of these two bills was SB 735, which was described in its title as:

> an act . . . creating a new criminal offense known as child solicitation by electronic communication device; adding the offense of child solicitation by electronic communication device to sex offender registration requirements; [and] providing an extended period of parole for the offense of child solicitation by electronic communication device.

S.B. 735, 48th Leg., 1st Sess. (N.M. 2007), *available at* https://www.nmlegis.gov/Sessions/07%20Regular/final/SB0735.pdf; *see also Ho*, 2014-NMCA-038, ¶ 7 (noting the apparent order of enactment).

---

2Generally, a person convicted of a felony must undergo a period of parole for either one or two years, as determined by the degree of the felony committed. Section 31-21-10(D). However, sex offenders, as defined in Section 31-21-10.1, are required to undergo sex offender parole, which is a longer period of time than standard parole and mandates additional terms, including global positioning system (GPS) monitoring throughout the entirety of parole. *Compare* § 31-21-10.1, *with* § 31-21-10(D).

**{5}** SB 735 made only one amendment to the sex offender parole statute, adding the crime of child solicitation to the list of covered offenses. *Compare* 2007 N.M. Laws, ch. 68, § 4(G)(6), *with* § 31-21-10.1(G). As required by the New Mexico Constitution, SB 735 included the full text of the sections of the statutes it modified. *See* 2007 N.M. Laws, ch. 68, § 4; N.M. Const. art. IV, § 18 (requiring laws revising sections of the New Mexico Statutes Annotated (NMSA) to include the text of each section in full). Therefore, SB 735 included a full restatement of the terms of the sex offender parole statute as it was written before the 2007 legislative session, which mandated the indeterminate period of five to twenty years for all sex offenders sentenced to sex offender parole. *Compare* 2007 N.M. Laws, ch. 68, § 4(A), *with* § 31-21-10.1(A) (2003).

**{6}** Regarding the list of registrable offenses under SORNA, SB 735 made just one change, adding child solicitation to the list of registrable sex offenses. 2007 N.M. Laws, ch. 68, § 2(E)(8). SB 735 also restated the amended SORNA section in full, as it was written before the 2007 legislative session, adding only child solicitation to the list of registrable offenses. *Compare* 2007 N.M. Laws, ch. 68, § 2,(E)(8), *with* NMSA 1978, § 29-11A-3(E)(11) (2005, amended 2013).

**{7}** The later-enacted of these 2007 bills was SB 528, which was entitled in relevant part as "an act . . . creating a new crime of aggravated criminal sexual penetration; increasing penalties for sex offenses against minors; . . . [and] imposing lifetime parole supervision for certain sex offenders[.]" S.B. 528, 48th Leg., 1st Sess. (N.M. 2007), *available at* https://www.nmlegis.gov/Sessions/07%20Regular/final/SB0528.pdf; *see also Ho*, 2014-NMCA-038, ¶ 7 (noting the apparent order of enactment).

**{8}** SB 528 made multiple amendments to the sex offender parole statute, including (1) the addition of the newly created crime of aggravated criminal sexual penetration to the list of covered offenses; (2) extension of the period of sex offender parole, lasting from five years up to the natural life of the sex offender, for those convicted of certain sex crimes; and (3) the addition of "electronic real-time monitoring of every sex offender released on parole for the entire time the sex offender is on parole" through GPS monitoring. 2007 N.M. Laws, ch. 69, § 4(A), (E), (I)(2). Thus, SB 528 amended the sex offender parole statute so that all sex offenders were subject to GPS monitoring and the length of the sex offender's parole sentence was to be determined by the specific sex crime committed, requiring a period of parole for not less than five years and up to either twenty years or the natural life of the sex offender. 2007 N.M. Laws, ch. 69, § 4(A), (E). SB 528 restated the list of crimes covered by the sex offender parole statute, amending it only to include the newly created crime of aggravated criminal sexual penetration. *Compare* 2007 N.M. Laws, ch. 69, § 4(I)(2), *with* § 31-21-10.1(G) (2003). The SB 528 list of crimes covered by the sex offender parole statute did not include the crime of child solicitation. *See* 2007 N.M. Laws, ch. 69, § 4(I).

**{9}** Regarding the list of registrable offenses under SORNA, SB 528 made only one change, adding the newly created crime of aggravated criminal sexual penetration to the list of registrable offenses. 2007 N.M. Laws, ch. 69, § 5(E)(1). SB 528 made no other changes to SORNA and restated the amended SORNA definitions section in full,

as it was written before the 2007 legislative session, adding only aggravated criminal sexual penetration to the list of registrable offenses. *Compare* 2007 N.M. Laws, ch. 69, § 5(E)(1), *with* § 29-11A-3 (2005). The SB 528 list of registrable offenses under SORNA did not include the crime of child solicitation. 2007 N.M. Laws, ch. 69, § 5(E).

**Initial Compilation of the 2007 Bills**

**{10}**　The New Mexico Compilation Commission is responsible for certifying, compiling, and annotating the laws of New Mexico. *See* NMSA 1978, § 12-1-3 (2019); NMSA 1978, § 12-1-7 (2019). "When presented with two or more acts enacted during the same session of the Legislature amending the same section of the NMSA, the Compilation Commission is governed by [NMSA 1978,] Section 12-1-8 [(1977, amended 2019)]." *Ho*, 2014-NMCA-038, ¶ 7 (omission, alteration, and internal quotation marks omitted).

**{11}**　The version of Section 12-1-8 in effect in 2007 directed the Compilation Commission, when faced with competing amendments from the same legislative session, to compile the act *last signed* by the governor into the NMSA and to include an annotation "setting forth in full the text of the conflicting acts." Section 12-1-8(B) (1977).

**{12}**　As directed by the version of Section 12-1-8 in effect at the time, the Compilation Commission compiled the amendments from the later-enacted SB 528 into the sex offender parole statute and noted in the annotations that the earlier-enacted SB 735 "define[s] 'sex offender' to include a person convicted of child solicitation by electronic communication device." Section 31-21-10.1 (2007 amend. annot.) (2007 compilation, child solicitation included in annotation only). The annotation to the sex offender parole statute included the full text of the relevant section of SB 735, which differed from the new language in the sex offender parole statute by including child solicitation and restating the pre-2007 terms of sex offender parole, which included neither GPS monitoring nor the extended lifetime parole term for enumerated offenses. *Compare* § 31-21-10.1 (2007 amend. annot.) (2007 compilation, child solicitation included in annotation only), *with* § 31-21-10.1 (2003).

**{13}**　Regarding the list of registrable offenses under SORNA, the Compilation Commission likewise only compiled the amendment from the later-enacted SB 528, adding the crime of aggravated criminal sexual penetration to the list of registrable offenses. Section 29-11A-3(E)(1) (2007). As required, the annotation to the SORNA list of registrable offenses noted that the earlier-enacted SB 735 added child solicitation to the list of registrable offenses and stated the full text of the relevant section of the earlier-enacted SB 735, which differed by including child solicitation, but not aggravated criminal sexual penetration, in the list of registrable offenses under SORNA. Section 29-11A-3 (2007 amend. annot.) (2007 compilation, child solicitation included in annotation only).

**2013 Amendment to SORNA's Registrable Offenses**

**{14}**    For the five years following SB 735's enactment, child solicitation was omitted from the list of registrable offenses under SORNA, although child solicitation remained noted in the annotations. *See* § 29-11A-3 (2007) (2007-2012 compilations, child solicitation included in the annotations only). In 2013, the Legislature passed House Bill (HB) 570 which was entitled in part as an act "reconciling multiple amendments to the same sections of law in Laws 2007." H.B. 570, 51st Leg., 1st Sess. (N.M. 2013), *available at* https://www.nmlegis.gov/Sessions/13%20Regular/final/HB0570.pdf. In relevant part, HB 570 amended the list of registrable offenses under SORNA to include child solicitation "for convictions occurring on or after July 1, 2013." 2013 N.M. Laws, ch. 152, § 1(I)(11). HB 570 made no corresponding amendment to the sex offender parole statute, which, like the SORNA list of registrable offenses, was at the time compiled without reference to the crime of child solicitation in the statutory language. *See* H.B. 570, 51st Leg., 1st Sess. (N.M. 2013), *available at* https://www.nmlegis.gov/Sessions/13%20Regular/final/HB0570.pdf; § 31-21-10.1 (2007 amend. annot.) (2007-2012 compilations, child solicitation in annotation only); § 29-11A-3 (2007 amend. annot.) (2007-2012 compilations, child solicitation in annotation only).

**{15}**    We previously addressed the legislative intent behind HB 570 in *Ho*, 2014-NMCA-038, ¶¶ 6, 13. At issue in *Ho* was whether a defendant who pled guilty to child solicitation in 2012 was required to register under SORNA, which required us to determine whether SB 735 effectively amended the list of registrable offenses under SORNA to include child solicitation. *Ho*, 2014-NMCA-038, ¶¶ 1, 3, 14. If SB 735's amendment to SORNA was ineffective, then only convictions after HB 570's effective date would require registration. *See Ho*, 2014-NMCA-038, ¶¶ 13-14. Ultimately, we held that SB 735's amendment to SORNA in 2007 was ineffective, reasoning that it was "clear that the Legislature believed it was necessary to pass the 2013 amendment [in HB 570] in order to make child solicitation by electronic communication device a SORNA-covered crime." *Ho*, 2014-NMCA-038, ¶ 13. In dicta, we noted that without the intervening 2013 amendment by HB 570, "we *might* have concluded that the Legislature intended both 2007 amendments [from SB 735 and SB 528] to be valid," but concluded that the 2013 amendment by HB 570 to SORNA required a different outcome. *Ho*, 2014-NMCA-038, ¶¶ 13-14 (emphasis added). We reasoned that "[i]t is clear from the fact that the Legislature sought to 'reconcile' " SB 735 and SB 528 through additional legislation in 2013 that it "viewed [SB 735 and SB 528] as irreconcilable." *Ho*, 2014-NMCA-038, ¶ 13.

**{16}**    Of particular importance to this case, although the Legislature enacted additional legislation in 2013 to reconcile the 2007 SORNA amendments in SB 735 and SB 528, *Ho*, 2014-NMCA-038, ¶ 13, the Legislature did not pass any legislation to reconcile the competing sex offender parole statute amendments from those very same bills. *See* § 31-21-10.1.

**2013 Expansion of Compilation Commission's Authority**

**{17}**    As described above, before 2013, when faced with two acts enacted during the same legislative session amending the same statute, the Compilation Commission was

required to compile the most recently enacted of the competing amendments and note the earlier-enacted amendment in the NMSA annotation. Section 12-1-8(B) (1977). In 2013, the Legislature expanded the Compilation Commission's authority; the amendment to Section 12-1-8 allowed the Compilation Commission to incorporate the earlier-enacted of the competing amendments into the NMSA if "after consultation with the legislative council service, [the Compilation Commission] determines that the provisions of . . . the earlier signed act[] can be reconciled." 2013 N.M. Laws, ch. 176, § 1. The 2013 amendment was retroactive in its effect, authorizing the Compilation Commission to reconcile and compile "[m]ultiple amendments to the same section of law that were enacted *before* the effective date" of this expansion of the Compilation Commission's authority. 2013 N.M. Laws, ch. 176, § 2 (emphasis added).

{18}   Although cited by neither party, the legislative history of the 2013 expansion to the Compilation Commission's authority is noteworthy. *See State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 35, 117 N.M. 346, 871 P.2d 1352 (indicating that courts may consider financial impact reports when discerning legislative intent). According to the Legislative Finance Committee's bill analysis, this amendment "put into statute the ruling of the New Mexico Supreme Court in *State v*[.] *Smith*, 2004-NMSC-032, 136 N.M. 372, 98 P.3d 1022[.]" Fiscal Impact Report for H.B. 546, *Compilation of Certain Amendments Into Law*, at 2 (February 25, 2013), *available at* https://www.nmlegis.gov/Sessions/13%20Regular/firs/HB0546.pdf. In *Smith*, our Supreme Court examined three amendments from the same legislative session that amended the same statute; the Court rejected the notion that "the last-enacted amendment is always the [L]egislature's final word" and held that when analyzing competing amendments, "legislative intent [is] paramount." *Smith*, 2004-NMSC-032, ¶¶ 21, 25. Although the compiled NMSA is presumptive law, "the courts will ultimately decide whether a conflict exists [between the bills] and whether that conflict is irreconcilable." *Id.* ¶ 25.

**2016 Compilation Commission Change to Sex Offender Parole Statute**

{19}   In 2016, the Compilation Commission incorporated SB 735's amendment to the sex offender parole statute by adding the crime of child solicitation to the statute's language rather than referencing it in the annotation. *See* § 31-21-10.1(I)(6) (2007) (2016 compilation, child solicitation included in statute rather than annotation). The annotations to the sex offender parole statute indicate that the 2016 compilation change was made pursuant to the Compilation Commission's expanded authority under Section 12-1-8 to reconcile multiple amendments from the same legislative session. Section 31-21-10.1 (2007 multiple amend. annot.) (2016 compilation, child solicitation included in statute rather than annotation). This was the first time that child solicitation was included in the statute's list of crimes covered by the sex offender parole statute, rather than simply noted in the annotation. *Compare* § 31-21-10.1 (2007) (2007-2015 compilations, child solicitation in annotation only), *with* § 31-21-10.1 (2007) (2016 compilation, child solicitation included in statute rather than annotation). Although the language of SB 735 did not include GPS monitoring as a term of sex offender parole for those convicted of child solicitation, *see* 2007 N.M. Laws, ch. 68, § 4, the Compilation Commission's 2016

modification to the NMSA effectively imposed GPS-monitored parole on those convicted of child solicitation. Section 31-21-10.1(E), (I)(6) (2007) (2016 compilation, child solicitation included in statute rather than annotation).

**DISCUSSION**

**{20}** Defendant argues that the competing 2007 amendments from SB 735 and SB 528 to the sex offender parole statute are irreconcilable, rendering ineffective the earlier SB 735 amendment to include child solicitation in the sex offender parole statute. Defendant contends that because SB 735's amendment was ineffective, the district court erred by sentencing Defendant to an indeterminate parole period of five to twenty years, in accordance with the terms of the sex offender parole statute, § 31-21-10.1(A)(1), rather than to a parole sentence of two years under the applicable general parole statute, § 31-21-10(D).

**{21}** Additionally, Defendant maintains that, even if the SB 735 amendment to the sex offender parole statute was effective, imposition of a sex offender parole sentence in this case violates due process because the NMSA was not compiled to include child solicitation in the language of the statute itself, only in the annotations, at the time of Defendant's offense. In light of our holding that SB 735's amendment to the sex offender parole statute was ineffective, we do not reach Defendant's due process argument. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 (observing that "courts exercise judicial restraint by deciding cases on the narrowest possible grounds and avoid reaching unnecessary constitutional issues").

**{22}** "Statutory interpretation is a question that this Court reviews de novo." *State v. Martinez*, 2006-NMCA-068, ¶ 5, 139 N.M. 741, 137 P.3d 1195. "In interpreting a statute, our primary objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "We do this by giving effect to the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801. "[I]n applying the plain meaning rule, this Court must exercise caution because its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate . . . differences of opinion concerning the statute's meaning." *Martinez*, 2006-NMCA-068, ¶ 5 (alteration, internal quotation marks, and citation omitted). "Whenever possible, we must read different legislative enactments as harmonious instead of as contradicting one another." *Smith*, 2004-NMSC-032, ¶ 10 (internal quotation marks and citation omitted).

**{23}** Our analysis of this issue is guided by our decision in *Ho*, which held that, despite the potentially reconcilable nature of the SB 735 and SB 528 amendments to SORNA, the SB 735 amendment to SORNA was ineffective because of our Legislature's belief that additional legislation was necessary "in order to make child solicitation . . . a SORNA-covered crime." *Ho*, 2014-NMCA-038, ¶ 13. We recognized that the two bills represented distinct and separate purposes that might have been

harmonized, were it not for the intervening 2013 legislation amending SORNA to include child solicitation. *Id.* ¶¶ 11, 14. As we explained in *Ho*,

> [SB 735] created the crime of child solicitation by electronic communication device and made it subject to SORNA, whereas the other [bill, SB 528,] created the crime of aggravated sexual penetration and made it subject to SORNA. . . . [N]othing in the title or language of the two bills would lead us to believe that the Legislature intended passage of SB 528 to undo the changes effected by passage of SB 735.

*Ho*, 2014-NMCA-038, ¶ 11 (alteration omitted). Nonetheless, we concluded that, although the 2007 bills might have been reconciled, the existence of the 2013 amendment to SORNA required a different outcome, reasoning that "[i]t is clear from the fact that the Legislature sought to reconcile" SB 735 and SB 528 through additional legislation in 2013 that the Legislature "viewed [SB 735 and SB 528] as irreconcilable." *Ho*, 2014-NMCA-038, ¶ 13 (internal quotation marks omitted). To harmonize the competing 2007 bills would "assume that the [2013] amendment was simply redundant, an assumption contrary to the core principles of statutory construction." *Id.* ¶ 14. Despite the distinct—and potentially reconcilable—differences between the two amendments to the list of registrable offenses under SORNA, it was clear that the Legislature believed SB 735 was ineffective in making child solicitation a SORNA-covered crime, and further legislation was required to do so. *Ho*, 2014-NMCA-038, ¶ 13.

**{24}**    Although the Legislature enacted legislation to reconcile these 2007 bills as they related to SORNA, no such legislation was enacted to reconcile the multiple discrepancies between the bills regarding the sex offender parole statute. *See* § 31-21-10.1. Defendant argues that "[t]here is no principled reason why the Legislature would view SB 735 and SB 528 as irreconcilable for the purpose of SORNA, but reconcilable for the purpose of sex offender parole." For the reasons that follow, we agree.

**{25}**    Unlike the conflicting SORNA amendments, which served distinct and potentially reconcilable purposes, as observed in *Ho*, 2014-NMCA-038, ¶ 11, the competing amendments to the sex offender parole statute made multiple amendments addressing the interrelated issues of who is subject to sex offender parole and what such a sentence requires. SB 735 amended the sex offender parole statute only by adding the crime of child solicitation, 2007 N.M. Laws, ch. 68, § 4(G)(6), whereas SB 528 imposed additional requirements by increasing the duration of sex offender parole and increasing the oversight of sex offenders on parole. 2007 N.M. Laws, ch. 69, § 4(A), (E). Specifically, SB 528 amended the sex offender parole statute to create two tiers of parole duration based on the specific sex crime committed, one tier retaining the sentence of five to twenty years already in existence, and the other tier requiring a sentence of parole for five years up to the natural life of the sex offender. 2007 N.M. Laws, ch. 69, § 4(A). Additionally, SB 528 mandated GPS monitoring for all sex offenders during the entirety of their parole sentence to provide "continuous information on the sex offender's whereabouts and enable law enforcement and the corrections department to determine the real-time position of a sex offender to a high level of

accuracy." 2007 N.M. Laws, ch. 69, § 4(E). We note that in addition to the supervisory implications of real-time location monitoring, a probation officer or officers tasked with such pervasive monitoring must govern attendant behaviors, such as the requirement that a sex offender maintain the GPS unit battery charge and maintain contact with the larger monitoring system. *See, e.g., State v. Chavez*, 2019-NMCA-068, ¶ 4, 451 P.3d 115 (discussing a sex offender's GPS-related probation violations and sanctions for failure to maintain the unit's battery and to maintain contact with the larger monitoring system). Such monitoring also carries a significant fiscal impact, not only from technology costs, but also from additional staffing costs for monitoring offenders and responding to violations. Fiscal Impact Report for S.B. 528, *Criminal Sexual Penetration of Children*, at 2 (March 12, 2007), *available at* https://www.nmlegis.gov/Sessions/07%20Regular/firs/SB0528.pdf. In sum, SB 735 merely added the crime of child solicitation to the then-existing system of sex offender parole, whereas SB 528 changed the nature of a sentence to sex offender parole by increasing the length, requirements, supervision, and costs of such a sentence. We cannot presume that the Legislature, in establishing such expansive revisions to sex offender supervision, did not additionally consider the number and nature of offenses to which such heightened requirements and resources must be applied, arriving at the list of covered offenses set forth in SB 528 and not SB 735.

**{26}**     Ultimately, our Legislature demonstrated that conflicting 2007 lists of SORNA-covered offenses required a legislative remedy in order for SB 735 to be effective, even though the two bills differed only in the reprinted lists of registrable offenses. In contrast, the conflicting amendments to the sex offender parole statute arising from these same 2007 bills differed both in the list of crimes triggering sex offender parole and in the terms and requirements of a sex offender parole sentence, yet our Legislature opted not to enact any additional legislation that would make SB 735 effective in adding child solicitation to the sex offender parole statute. We can discern no principled reason for determining that the singular and distinct SORNA amendments are not reconcilable while the multiple interrelated amendments to the sex offender parole statute from these same bills would be.

**{27}**     To the extent that the State invites us to revisit the central holding in *Ho* and overrule it, we decline to do so. Before overruling a previous decision by this Court, we must consider several factors:

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*State v. Pieri*, 2009-NMSC-019, ¶ 21, 146 N.M. 155, 207 P.3d 1132 (internal quotation marks and citation omitted). The State fails to argue that any of these factors are

applicable here and, therefore, we decline to address the issue further. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be"). Additionally, we note that once a court has decided the meaning of a statute, it is the province of the Legislature to determine whether the interpretation is correct and respond if needed. *See* 2B Norman J. Singer & Shambie Singer, *Sutherland Statutory Construction* § 49:9 (7th ed. 2020) (explaining that legislative inaction in following a court's interpretation of a statute is "likely evidence that the interpretation is correct").

**{28}** The State argues that this case is governed by our Supreme Court's ruling in *Smith* and, because the bills have independent and separate purposes, the competing amendments of SB 735 and SB 528 are harmonious. However, for the reasons we explain, we distinguish this case from *Smith* and decline to harmonize the two amendments to the sex offender parole statute over thirteen years after the fact.

**{29}** In *Smith*, our Supreme Court addressed competing amendments to the New Mexico driving while intoxicated (DWI) statute that were passed during the same legislative session. 2004-NMSC-032, ¶ 2. The first enactment "lowered the limit for commercial drivers' blood or breath alcohol concentration" and repeated, without modification, the DWI penalties. *Id.* The second enactment amended the DWI penalties and increased the sentence for fourth or subsequent felony DWI convictions. *Id.* The third enactment authorized "intergovernmental agreements between tribes and the state in order to share information needed to prosecute repeat DWI offenders[,]" restating without amending the DWI penalty provisions as they existed before the second enactment's enhancements for fourth or subsequent repeat DWI offenses. *Id.* Our Supreme Court rejected the premise that "the last-enacted amendment is always the [L]egislature's final word" and instead focused on legislative intent. *Id.* ¶ 25. After analyzing the language of the three competing enactments, their titles, and their respective purposes, our Supreme Court concluded that all three enactments could be construed harmoniously and given effect because the "apparent objective" of each enactment "was to make specific, *independent* improvements to the DWI statute." *Id.* ¶¶ 13, 17 (emphasis added). Our Supreme Court was "skeptical of reading too much into . . . the reprinting of old penalty provisions" in the enactments "that were fashioned to address subjects other than penalties." *Id.* ¶ 19. "In passing a law to establish intergovernmental agreements, which is but a small part of the overall goal to improve DWI prosecutions, the [L]egislature gave no indication of an intent to repeal other key components of that same goal." *Id.* ¶ 21.

**{30}** Unlike *Smith*, which harmonized bills dealing with distinct and separate DWI issues, this case involves competing bills that addressed the intertwined issues of who is subject to sex offender parole and the terms and conditions of sex offender parole. Although *Smith* guides us to be "skeptical of reading too much into . . . the reprinting of old penalty provisions" in bills "that were fashioned to address subjects other than penalties[,]" *id.* ¶ 19, we cannot disregard the reprinting of the old provisions of the sex offender parole statute here because SB 735 and SB 528 *both* addressed the penalties

at issue—one amending the list of crimes that trigger sex offender parole, and the other amending the duration and terms of such a sentence to sex offender parole. While these two interrelated issues might have been distinct enough to harmonize, we cannot ignore our Legislature's clear intent that other, less divergent amendments from these two bills were irreconcilable.

**{31}** Simply put, SB 735 added child solicitation to the sex offender parole statute without consideration of enhanced parole terms such as GPS monitoring, and likewise, GPS monitoring was added as a term of sex offender parole without consideration of whether that term should apply to the crime of child solicitation. Because we cannot conclude that the Legislature meant to subject those convicted of child solicitation to the enhanced sex offender parole terms, we apply the rule of lenity and resolve this ambiguity in Defendant's favor.

**{32}** "The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." *State v. Johnson*, 2009-NMSC-049, ¶ 18, 147 N.M. 177, 218 P.3d 863 (internal quotation marks and citation omitted). "[L]enity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* (internal quotation marks and citation omitted). When considered in light of our Legislature's apparent belief that SB 735 and SB 528 were irreconcilable regarding SORNA, and the lack of legislative remedy for the conflicting amendments to the sex offender parole statute, the scope of parole intended for those convicted of child solicitation remains ambiguous.

**{33}** Resolving this ambiguity in Defendant's favor, we hold that SB 735 was ineffective in amending the sex offender parole statute to include the crime of child solicitation. Therefore, the district court erred by sentencing Defendant in accordance with the terms of the sex offender parole statute, § 31-21-10.1(A)(1), rather than under the applicable general parole statute, § 31-21-10(D).

**CONCLUSION**

**{34}** For the foregoing reasons, we reverse Defendant's parole sentence and remand to the district for resentencing consistent with this opinion.

**{35} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**I CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JANE B. YOHALEM, Judge (dissenting).**

**YOHALEM, Judge (dissenting).**

**{36}** I respectfully dissent from the majority's holding that SB 735, which, amended the sex offender parole statute, § 31-21-10.1, to include child solicitation, was ineffective. The majority opinion relies on this Court's decision in *Ho*, 2014-NMCA-038. *Ho* holds that a 2013 amendment of SORNA, § 29-11A-3, should be honored as the Legislature's last word, intended to correct uncertainty about the application of the 2007 amendment to SORNA. *See Ho*, 2014-NMCA-038, ¶¶ 13-14. I cannot agree with the majority's application of *Ho* to read into the Legislature's amendment of SORNA in 2013—an amendment which makes no mention of the sex offender parole act— legislative intent to vacate an amendment to the parole act enacted six years earlier.

**{37}** In my view, this case is governed by our Supreme Court's decision in *Smith*, 2004-NMSC-032. *Smith* requires our courts to construe amendments to the same statutory section enacted in a single legislative session to give effect to each, if at all possible. *See id.* ¶ 23 (holding that "every presumption is to be indulged in favor of the validity and regularity of legislative enactments" (internal quotation marks and citation omitted)).

**{38}** Although the majority claims to apply *Smith*, its analysis of legislative intent fails to take to heart *Smith*'s direction to focus on the stated purposes of each amendment in assessing how the drafters of the amendments would apply them to the existing statute. *See id.* Rather than looking to the stated purpose of the 2007 Legislature identified in the titles to SB 735 and SB 528, as our Supreme Court did in *Smith*, the majority instead discusses whether there is sufficient indication that legislators intended to approve the application of monitoring provisions in the later-enacted bill to the earlier-enacted crime of child solicitation. This is not the analysis mandated by *Smith*. *See* 2004-NMSC-032, ¶ 14 (relying on the title of the bill to determine the Legislature's purpose).

**{39}** The title of SB 735 reveals that the bill was intended to add to New Mexico's child sexual criminal offenses "child solicitation by electronic communication device"; to "provid[e] an extended period of parole for the offense of child solicitation by electronic communication device"; and to amend SORNA to require registration of sex offenders convicted of child solicitation by electronic communication device. SB 528, enacted in the Senate within days of SB 735, and in the House on the very same day, added the crime of "aggravated criminal sexual penetration" to New Mexico's criminal statutes and to SORNA. SB 528 amended the child sexual offender parole act, § 31-21-10.1, the statute at issue here, to "impos[e] lifetime parole supervision for certain sex offenders" and to otherwise "increas[e] penalties for sex offenses against minors[.]" SB 528 also added electronic monitoring to the procedures for parole of child sex offenders. As was true with the three bills amending the DWI statute, NMSA 1978, § 66-8-102 (2003, amended 2016), at issue in *Smith*, the two bills at issue here indicate a common intent to address perceived problems in the law governing child sex offenders. Both bills add new child sex offenses to New Mexico law and include those offenses in both the sex offender registration and sex offender parole statutes. SB 528 also amends the sex

offender parole statute to increase monitoring and to extend the time on parole for the most serious offenses. Applying the *Smith* analysis to the Legislature's stated purposes, SB 735 and SB 528 are plainly reconcilable. There is no evidence of legislative intent to repeal the addition of child solicitation in the happenstance that SB 528 was signed last by the governor, nor is there evidence of Legislative intent to repeal the addition of child solicitation to either the registration requirements of SORNA or to the sex offender parole requirements even though SB 528 imposes some new requirements for sex offender parole.

**{40}** This Court agreed with this analysis in its opinion in *Ho. See* 2014-NMCA-038, ¶ 12 ("[W]e would conclude . . . that the Legislature intended both SB 528 and SB 735 to be valid[.]"). *Ho* reversed course and reached a different result solely to account for the Legislature's subsequent amendment of SORNA in 2013. *Id.* ¶ 13 ("But we cannot ignore the import of the 2013 amendment . . . , the existence of which requires a different outcome."). *Ho* represents a careful analysis by this Court of legislative intent in both 2007 and 2013, culminating in the conclusion that the 2013 amendment of SORNA should be honored as the Legislature's last word, intended to correct uncertainty about the application of the 2007 amendment to SORNA. *See id.* ¶¶ 13-14. In the same session, the Legislature addressed the confusion created by the version of Section 12-1-8 in effect from 1977 until 2013. The 1977 statute provided that if the same section of the NMSA was amended by two or more acts enacted in the same session of the Legislature, only the last-enacted section would be compiled into the text of the law. Section 12-1-8 was amended in 2013 to allow the Compilation Commission, in consultation with the legislative council service, to compile all reconcilable amendments enacted in the same session into law.

**{41}** Given the focus of *Smith*, *Ho*, and both the 1977 and 2013 versions of Section 12-1-8(A) on acts "amending the same section of the NMSA," as well as *Ho*'s narrow focus on resolving the confusion created by the 2013 amendment of the same NMSA section, *Ho* should not be applied to read into the Legislature's amendment of SORNA an unstated legislative intent to impose the same construction on a different section of the New Mexico statutes, one which was not amended in 2013. Although SORNA was amended in 2013, in part, to reconcile the 2007 amendments to SORNA made by SB 735 and SB 258, there were no amendments made in 2013 to the sexual offender parole statute. Nor was there any indication of legislative intent to make an exception to the principles of *Smith*. Indeed, it was the 2013 Legislature that amended Section 12-1-8 to direct the Compilation Commission, consistent with *Smith*, to compile all reconcilable amendments to the same section of the New Mexico statutes, rather than continuing to codify only the last-enacted amendment. Three years later, in 2016, after reviewing the 2007 amendments to the sex offender parole statute, the Compilation Commission included SB 735's amendment of the child sexual offender parole act at issue here in the main text of the NMSA. I believe that codification correctly applies *Smith* and should not be disturbed. Because the majority holds otherwise, I respectfully dissent.

**JANE B. YOHALEM, Judge**