The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number:**

**Filing Date:** March 13, 2023

**NO. S-1-SC-38713**

**STATE OF NEW MEXICO,**

      Plaintiff-Petitioner,

v.

**ANTHONY C. SENA,**

      Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Fred Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Charles J. Gutierrez, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Charles Agoos, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**OPINION**

**THOMSON, Justice.**

{1}     Given our Constitution's limited timetable for considering and passing legislation, it is no surprise that two bills relating to the same issue may pass and be signed into law during the same legislative session. *See* N.M. Const. art. IV, § 5(A) ("Every regular session of the legislature convening during an odd-numbered year shall remain in session not to exceed sixty days, and every regular session of the legislature convening during an even-numbered year shall remain in session not to exceed thirty days."). When this happens, this Court may be tasked with deciding whether those two laws can be reconciled.

{2}     In 2007, two bills addressing the monitoring and parole of convicted sex offenders passed within days of each other and were signed into law on the same day. Defendant Anthony Sena, who pleaded no contest to the offense of child solicitation by electronic communication device, asks us to hold these laws irreconcilable.[1] Consequently, he seeks application of the preexisting standard parole term to his sentence and not the extended parole term enacted in the 2007 legislation. We disagree that these bills are irreconcilable and conclude that the

---

[1]Four other cases concerning the same issue have been held in abeyance pending the outcome of this case.

extended parole term applies to those convicted of this crime. In this opinion, we reaffirm that our role is to read statutes harmoniously if possible and that the proper test for a court to apply when reconciling legislation and discerning legislative intent in these circumstances is that of *State v. Smith*, 2004-NMSC-032, 136 N.M. 372, 98 P.3d 1022. For these reasons, we reverse the Court of Appeals opinion and affirm the district court's imposition of the extended parole term on Defendant's crime. *See State v. Sena*, 2021-NMCA-047, ¶¶ 24, 33, 495 P.3d 1163.

**I.      BACKGROUND**

{3}      Defendant entered a conditional plea to "child solicitation by electronic communication device," contrary to NMSA 1978, Section 30-37-3.2(C) (2007) (CES), having been accused of luring via a website an undercover officer posing as a young teenage girl into meeting at a house for a sexual encounter in October 2015. The district court sentenced Defendant to three years in the Department of Corrections. Because CES is included in the current sex offender parole statute, NMSA 1978, § 31-21-10.1(I)(6) (2007), the court imposed on Defendant a five- to twenty-year indeterminate period of sex offender parole and not the standard parole term applicable to other criminal offenders. *Compare* § 31-21-10.1(A)(1), (I)(6), *with* NMSA 1978, § 31-21-10(D) (2009) (mandating a two-year period of parole for an inmate who is convicted of a third-degree felony).

{4} The parole term that applies to Defendant turns on whether two bills passed in the 2007 legislative session—Senate Bill 735 (S.B. 735, 48th Leg., 1st Sess. (N.M. 2007))[2] (SB 735) and Senate Bill 528 (S.B. 528, 48th Leg., 1st Sess. (N.M. 2007))[3] (SB 528)—can be reconciled insofar as they apply to the crime of CES. The Court of Appeals concluded that these bills could not be reconciled and felt bound by its previous decision in *State v. Ho*, 2014-NMCA-038, ¶ 13, 321 P.3d 147. *Sena*, 2021-NMCA-047, ¶¶ 23-24. The Court of Appeals reversed the district court and ordered the district court to impose the standard parole term. *Id.* ¶¶ 33, 34. Because the analysis in *Ho*, 2014-NMCA-038, ¶¶ 13-14, focused solely on sex offender registration provisions—not the parole statute—we determine its application to this case inappropriate. In doing so, we remind the courts below that when confronted with reconciling two pieces of legislation passed in the same session, the well-established test in *Smith*, 2004-NMSC-032, ¶¶ 7, 13, 25, is the more appropriate way to discern legislative intent. We begin by discussing the legislative history of SB 735 and SB 528 and the Court of Appeals decision in this case.

[2]Available at https://www.nmlegis.gov/Sessions/07%20Regular/final/SB0735.pdf (last visited Mar. 3, 2023).

[3]Available at https://www.nmlegis.gov/Sessions/07%20Regular/final/SB0528.pdf (last visited Mar. 3, 2023).

**A. Legislative History of SB 735 and SB 528**

{5} The offense of CES was created with the enactment of SB 735. *See* 2007 N.M. Laws, ch. 68, §§ 1-5. The title of the SB 735 enactment stated its purpose:

> Relating to sex offenders; creating a new criminal offense known as child solicitation by electronic communication device; adding the offense of child solicitation by electronic communication device to sex offender registration requirements; *providing an extended period of parole for the offense of child solicitation by electronic communication device.*

*Id.* (emphasis added).

{6} The SB 735 enactment focused on three main legislative policy directives: (1) creating the offense of CES under NMSA 1978, Section 30-37-3.2, (2) adding CES to the Sex Offender Registration and Notification Act (SORNA) under NMSA 1978, Section 29-11A-3(E)(11) (2007, amended 2013) and NMSA 1978, Section 29-11A-5(E)(8) (2007),[4] and (3) requiring those convicted of CES to serve a mandated five- to twenty-year period of sex offender parole under Section 31-21-10.1(A).

{7} From the same session came the enactment of SB 528, whose title reads:

---

[4]SORNA is part of New Mexico's Law Enforcement Code and is not part of the Criminal Procedure Code. *See* NMSA 1978, §§ 29-11A-1 to -10 (1995, as amended through 2013). The express purpose of SORNA is to protect communities by requiring resident sex offenders "to register with the county sheriff," "requiring the establishment of a central registry for sex offenders," and "providing public access to information regarding certain registered sex offenders." Section 29-11A-2(B)(1), (3), (4).

Relating to sex offenders; creating a new crime of aggravated criminal sexual penetration; increasing penalties for sex offenses against minors; responding to Jessica's Law; imposing lifetime parole supervision for certain sex offenders; clarifying standard of proof; clarifying definitions; increasing period of parole for criminal sexual contact of a minor in the fourth degree.

*See* 2007 N.M. Laws, ch. 69, §§ 1-9.

{8}     The SB 528 enactment focused on different policy objectives than those of the SB 735 enactment, including (1) creating the new offense of aggravated criminal sexual penetration under NMSA 1978, Section 30-9-11(C) (2007, amended 2009), (2) adding the offense of aggravated criminal sexual penetration to SORNA under Sections 29-11A-3(E)(1) (2007) and 29-11A-5(D)(1), and (3) amending the sex offender parole statute by (a) mandating sex offender parole for those convicted of that new offense under Section 31-21-10.1(A), (b) creating a two-tiered structure for sex offender parole, allowing a potential period of lifetime parole for the most severe sex offenses under Section 31-21-10.1(A)(2), and (c) requiring GPS monitoring for offenders on sex offender parole under Section 31-21-10.1(E). Importantly, SB 528 made no mention of CES or the extended parole requirements for this crime.

{9}     As introduced, each bill restated the existing law in full, as required by our Constitution. *See* N.M. Const. art. IV, § 18 ("No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full."). SB 735 and SB

5

528 passed the Senate within two days of each other and passed the House on the same day, and the Governor signed them into law on the same day. *See* SB 735 Legislation Actions;[5] SB 528 Legislation Actions.[6]

{10}    When multiple amendments to the same statutory section are enacted during the same legislative session, as in this case, our statutes set forth the procedure for constructing and compiling them into law. NMSA 1978, § 12-1-8 (2019). In accordance with the version of this statute that was in effect at the time of the two enactments, § 12-1-8(A) (1977),[7] the New Mexico Compilation Commission compiled the last-signed bill, SB 528, into NMSA 1978 in the statute that governs sex offender parole and included the text of the SB 735 enactment and notations of

---

[5]Available at https://www.nmlegis.gov/Legislation/Legislation?Chamber= S&LegType=B&LegNo=735&year=07 (last visited Mar. 3, 2023).

[6]Available at https://www.nmlegis.gov/Legislation/Legislation?Chamber= S&LegType=B&LegNo=528&year=07 (last visited Mar. 3, 2023).

[7]The language of Section 12-1-8(A) (1977) reads in full:

[I]f two or more acts are enacted during the same session of the legislature amending the same section of the NMSA, regardless of the effective date of the acts, the act last signed by the governor shall be presumed to be the law and shall be compiled in the NMSA. The history following the amended section shall set forth the section, chapter and year of all acts amending the section. A compiler's note shall be included in the annotations setting forth the nature of the difference between the acts or sections.

its passage in the annotations. *See* § 31-21-10.1 (compiler annotations, "2007 amendments") (noting that the SB 735 enactment defined "sex offender" to include someone convicted of CES whereas the SB 528 enactment defined "sex offender" to include someone convicted of aggravated criminal sexual penetration, and explaining that the parole statute was set out as amended by the SB 528 enactment because SB 528 was the last-signed bill). The Compilation Commission followed the same procedure when compiling the two bills into SORNA. *See* § 29-11A-3 (2007) (compiler annotations, "2007 amendments").

{11}   Then, in 2013, the Legislature passed a comprehensive amendment exclusive to SORNA. The title of the act reads,

> Relating to sex offenders; requiring additional registration information; requiring sex offenders to register and update information within five business days; providing for verification of registration; providing for electronic updates; including additional offenders on the sex offender internet web site; requiring that certain crimes be committed with sexual intent before they are deemed a sex offense; providing for information to be available on the sex offender internet web site; reiterating state preemption of the field of sex offender registration by prohibiting law enforcement from requiring additional registration or from imposing other restrictions; providing definitions; *reconciling multiple amendments to the same sections of law in Laws 2007*.

2013 N.M. Laws, ch. 152, §§ 1-6 (2013 SORNA Amendment) (emphasis added). This amendment reconciled portions of the SB 735 and SB 528 enactments that involve sex offender registration. *See Ho*, 2014-NMCA-038, ¶ 13. Relevant to the

Court of Appeals holding in *Ho*, the amendment added CES as a registrable offense under SORNA effective July 1, 2013. *Ho*, 2014-NMCA-038, ¶¶ 13-14; 2013 SORNA Amendment, § 1. As a result, the current version of SORNA lists CES as a registrable offense for those convicted on or after July 1, 2013. Section 29-11A-3(I)(11). Significantly, while the 2013 SORNA Amendment comprehensively altered SORNA in the manner described, it did not modify the sex offender parole statute or the parole requirements for CES.

{12} In that same year, the Legislature also amended the compilation statute, providing that

> if the New Mexico compilation commission, after consultation with the legislative council service, determines that the provisions of one or more of the earlier signed acts can be reconciled with the act that is to be compiled, those provisions shall be incorporated in the last-signed act and compiled in the NMSA.

2013 N.M. Laws, ch. 176, § 1; § 12-1-8(A) (2013). The amendment allowed the Compilation Commission to not only compile recently enacted legislation but also to revisit laws passed before the effective date of the new compilation process to determine if those laws can be reconciled with the compiled act. 2013 N.M. Laws, ch. 176, § 2 ("Multiple amendments to the same section of law that were enacted before the effective date of this act may be reconciled and compiled in accordance with the provisions of Section 1 of this act." (appearing in compiler annotations

8

under "Temporary provisions" of the 2013 statute but not in the text of the statute)). This, as the Court of Appeals correctly noted, granted the Compilation Commission authority to reconcile and compile statutes in accordance with this Court's opinion in *Smith*. *See Sena*, 2021-NMCA-047, ¶¶ 17-18 (recognizing that expansion of the Compilation Commission's authority in 2013 "put into statute the ruling of the New Mexico Supreme Court in [*Smith*]" (internal quotation marks and citation omitted)); § 12-1-8(A) (2013). In 2016, in consultation with the legislative council service, the Compilation Commission reconciled and compiled the SB 735 and SB 528 enactments into the sex offender parole statute. *See* 2007 N.M. Laws, ch. 68, § 4; 2007 N.M. Laws, ch. 69, § 4. *Compare* § 31-21-10.1(I) (2007 Historical NMSA 1978), *with* § 31-21-10.1(I) (2016 Historical NMSA 1978) (adding a person guilty of CES as a "'sex offender'" to the 2007 statutory text). As a result, the current sex offender parole statute defines those convicted of CES as sex offenders, based on the undisturbed legislative enactment of SB 735 passed in 2007. *See* § 31-21-10.1(I)(6) (compiler annotations, "2007 Multiple Amendments"). With this legislative history in mind, we turn to an examination of the Court of Appeals decision.

## B.     The Court of Appeals Decision

{13}     In a split decision, the Court of Appeals reversed the district court's application of the extended parole term instead of the standard parole term. *Sena*, 2021-NMCA-047, ¶¶ 33-34. The majority relied heavily on its earlier decision in *Ho*, which concluded that the SB 528 and SB 735 enactments are irreconcilable as they applied to the SORNA registration requirement. *Sena*, 2021-NMCA-047, ¶¶ 23, 24; *see Ho*, 2014-NMCA-038, ¶¶ 1, 13. Treating the analysis of the registration requirement as analogous to the parole requirement, the Court of Appeals summarily concluded that there "is no principled reason why the Legislature would view SB 735 and SB 528 as irreconcilable for the purpose of SORNA [in 2013, as held by *Ho*, 2014-NMCA-038, ¶ 13] but reconcilable for the purpose of sex offender parole." *Sena*, 2021-NMCA-047, ¶¶ 23-24 (internal quotation marks and citation omitted). The majority also focused on provisions in SB 528 that did not exist in SB 735 to reach the decision that the bills are irreconcilable. *Sena*, 2021-NMCA-047, ¶ 25 ("We cannot presume that the Legislature, in establishing such expansive revisions to sex offender supervision, did not additionally consider the number and nature of offenses to which such heightened requirements and resources must be applied, arriving at the list of covered offenses set forth in SB 528 and not SB 735."). The majority ultimately concluded that "SB 735 was ineffective in amending the sex

offender parole statute to include the crime of [CES]." *Sena*, 2021-NMCA-047, ¶¶ 1, 33.

{14} The dissent disagreed with the application of *Ho* and determined that the better analysis is contained in *Smith*. *Sena*, 2021-NMCA-047, ¶¶ 37, 41 (Yohalem, J., dissenting). The dissent did not view *Ho* as dispositive of legislative intent as to sex offender parole in 2007 because *Ho*'s reasoning turned on intent derived from the 2013 SORNA-exclusive amendment, not the sex offender parole statute. *Sena*, 2021-NMCA-047, ¶¶ 36, 40 (Yohalem, J., dissenting). In addition, the dissent properly took issue with interpreting the intent of the Legislature in 2013 as addressing legislative intent of sex offender parole legislation passed six years earlier. *See id.* ¶ 36. The dissent concluded, and we agree, that the 2007 statute which is the current version of the sex offender parole statute, § 31-21-10.1, correctly states the legislative intent behind the 2007 amendments to the sex offender parole statute, which is to apply the extended parole term to those convicted of CES. *See Sena*, 2021-NMCA-047, ¶ 41 (Yohalem, J., dissenting).

**II. DISCUSSION**

**A. Standard of Review**

{15} We review "questions of statutory construction" de novo. *Tran v. Bennett*, 2018-NMSC-009, ¶ 16, 411 P.3d 345 (citing *Chatterjee v. King*, 2012-NMSC-019,

11

¶ 11, 280 P.3d 283). The main purpose of statutory interpretation is to give effect to the intent of the Legislature. *N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 11, 142 N.M. 248, 164 P.3d 947 (citing *Cobb v. State Canvassing Bd.*, 2006-NMSC-034, ¶ 34, 140 N.M. 77, 140 P.3d 498); *State ex rel. Klineline v. Blackhurst*, 1988-NMSC-015, ¶ 12, 106 N.M. 732, 749 P.2d 1111. To glean legislative intent, reviewing courts should look only to the plain language of the statute unless the meaning of the language is ambiguous. *Riegger*, 2007-NMSC-044, ¶ 11. We must "'construe the entire statute as a whole so that all the provisions will be considered in relation to one another.'" *Id.* (quoting *Cobb*, 2006-NMSC-034, ¶ 34).

{16}     We begin by reorienting the statutory reconciliation analysis away from *Ho* and toward our holding in *Smith*.

**B.     *Smith* Is the Controlling Analysis**

{17}     We adopt the view of the dissent in *Sena* that "this case is governed by [this Court's] decision in *Smith*, 2004-NMSC-032[, which] requires our courts to construe amendments to the same statutory section enacted in a single legislative session to give effect to each, if at all possible." *Sena*, 2021-NMCA-047, ¶ 37 (Yohalem, J., dissenting); *Smith*, 2004-NMSC-032, ¶ 13 (citing *State v. Rue*, 1963-NMSC-090, ¶ 15, 72 N.M. 212, 382 P.2d 697; *State v. Herrera*, 1974-NMSC-037, ¶¶ 9-10, 86 N.M. 224, 522 P.2d 76; NMSA 1978, § 12-2A-10(A) (1997)). In *Smith*, this Court

overturned a split decision of the Court of Appeals that held successive amendments to a DWI statute as irreconcilable. 2004-NMSC-032, ¶¶ 1, 7. *Smith* established that when a court approaches questions of legislative intent, it should not begin with the premise that statutes are irreconcilable. *See id.* ¶ 13 ("At the outset, we believe the [lower court's] majority relies on a faulty premise, namely, that the three amendments to the DWI statute are irreconcilable."). The *Smith* Court urged against a mechanical analysis and adopted the requirement "to look to see what the Legislature was trying to accomplish in its passage of the three bills at issue." *Id*. ¶¶ 7, 25 (internal quotation marks and citation omitted). Moreover, the *Smith* Court established that if statutes have distinct purposes that may be read harmoniously, courts must give effect to each. *See id.* ¶ 13. This is especially true because,

> [g]iven the dynamic and sometimes frenzied way in which bills are introduced, passed, and signed into law during a single legislative session, we [must not] place an impractical burden on both the legislature and the governor, [by requiring] them to reconcile all bills in advance of their passage or signature . . . .

*Id.* ¶ 20.

{18}     In *Smith*, the Court held that even though the three amendments involved the DWI statute, each had a distinct purpose. *Id.* ¶¶ 13, 17. These separate purposes were clear from the titles (namely, one amendment regarding felony sentencing, another regarding intergovernmental agreements, and the last addressing lowering the legal

13

blood alcohol levels for commercial drivers), and each served the general purpose of strengthening the DWI statute. *See id.* ¶¶ 14-17 (looking at the title of each bill and determining that each bill served both a distinct purpose and the common purpose "to make specific, independent improvements to the DWI statute"). Reliance on the title of a statute to aid in the analysis is appropriate because a title may be considered part of the act if the title is necessary to the statute's construction. *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 18, 289 P.3d 1232; 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Constr.*, § 18:7, at 78-79 (7th ed. 2009) (stating that "the title of a statute may be used as an aid to construe the statute even though it is not dispositive on the issue of legislative intent"); *State ex rel. Sedillo v. Sargent*, 1918-NMSC-042, ¶ 10, 24 N.M. 333, 171 P. 790 ("The title of the act plainly shows the legislative intent, and, reading the act in connection with the title, [the intent] is clearly apparent."). Using *Smith* as the proper guide, we analyze the question whether the SB 735 and SB 528 enactments serve distinct purposes as they relate to sex offender parole.

**C.    Reconciling the SB 735 and SB 528 Enactments**

{19}    Like *Smith,* this case involves multiple amendments with distinct purposes that each serve to strengthen the statute at issue. The SB 735 enactment made CES—

14

and thus Defendant's acts—illegal and subject to an extended parole requirement. *See* 2007 N.M. Laws, ch. 68 (containing, in the title of the act, "Creating a new criminal offense known as child solicitation by electronic communication device; . . . providing an extended period of parole for the offense of child solicitation by electronic communication device"). The SB 528 enactment focused on goals unrelated to the specific charge of CES, namely creating the offense of aggravated criminal sexual penetration, including a second tier of sex offender parole that imposes lifetime parole for the most serious sex offenses, requiring electronic monitoring, and increasing parole requirements for criminal sexual contact of a minor in the fourth degree. *See* 2007 N.M. Laws, ch. 69 (containing, in the title of the act, "Creating a new crime of aggravated criminal sexual penetration; increasing penalties for sex offenses against minors; . . . imposing lifetime parole supervision for certain sex offenders; . . . increasing period of parole for criminal sexual contact of a minor in the fourth degree"). The fact that the two bills as enacted addressed parole requirements for sex offenders does not demonstrate conflicting intentions of the Legislature because each bill's purpose is distinct in its efforts to make specific independent improvements to the sex offender parole statute. *See Smith*, 2004-NMSC-032, ¶ 17; 2007 N.M. Laws, ch. 68; 2007 N.M. Laws, ch. 69. Therefore, for this reason alone, we conclude that the SB 735 and SB 528 enactments are

15

reconcilable, and we give effect to the extended parole requirements provided in the SB 735 enactment.

{20}    Next, we reject any suggestion that *Ho* or the 2013 SORNA Amendment that forms the basis of its analysis changes the outcome of this case. *See Sena*, 2021-NMCA-047, ¶¶ 23-24. We strongly caution against the continued application of *Ho* to determine whether these two bills are reconcilable. First, the holding in *Ho* is limited in its scope in that it involves only sex offender registration requirements for those convicted of CES and does not implicate parole. *See* 2014-NMCA-038, ¶ 14. Second, by applying *Ho* as broadly as the Court of Appeals does in this case, one must conclude that in 2013 the Legislature impliedly repealed the 2007 enactment of the extended parole requirement for CES, making the passage and signing of SB 735 an absolute nullity, something we decline to do.

{21}    In *Ho*, the Court of Appeals held that a convicted sex offender who pleaded guilty to CES in 2012 was not required to abide by SORNA registration requirements imposed by the 2013 SORNA Amendment. 2014-NMCA-038, ¶¶ 1, 3, 14. The *Ho* Court began by faithfully applying the test for discerning legislative intent pronounced in *Smith,* concluding initially that the SB 528 and SB 735 enactments are likely reconcilable. *Id.* ¶¶ 11-12 ("Absent the 2013 amendment, we would apply *Smith* and conclude that SB 735 and SB 528 are reconcilable because

16

they have different purposes and the substantive changes they made . . . are not at odds . . . , [and] we would conclude further that the Legislature intended both SB 528 and SB 735 to be valid."). Later, however, the *Ho* Court lost its bearings by focusing not on what was contained in the SB 735 and SB 528 enactments but on a portion of the 2013 SORNA Amendment's title, "reconciling multiple amendments to the same sections of law in Laws 2007," and on the effective date for the registration requirement. *Ho*, 2014-NMCA-038, ¶¶ 6, 11, 13-14 (internal quotation marks and citation omitted) ("But we cannot ignore the import of the 2013 amendment to Section 29-11A-3(I), the existence of which requires a different outcome."); 2013 N.M. Laws, ch. 152 (title). The *Ho* Court concluded that the 2013 SORNA Amendment evidenced the Legislature's recognition that the SB 528 and SB 735 enactments were irreconcilable as to making CES a registrable offense for convictions that occurred before 2013. *See* 2014-NMCA-038, ¶ 13.

{22}   The Court of Appeals decision to simply carry forward *Ho*'s holding regarding registration and render the SB 735 enactment's parole requirements ineffective was error. *See Sena*, 2021-NMCA-047, ¶¶ 23-24. To begin, the Court of Appeals gives too much weight to the broad statement in *Ho* that the Legislature "viewed the 2007 amendments as irreconcilable." *Ho*, 2014-NMCA-038, ¶ 13; *see Sena*, 2021-NMCA-047, ¶¶ 23-24. The use of "reconciling" in the 2013 SORNA

17

Amendment title does not imply that the Legislature views the SB 735 and SB 528 enactments as irreconcilable. In fact, the wording in the amendment can be read reasonably to simply express the desire of the Legislature to reconcile those portions of two statutes that can be reconciled. More importantly, there is nothing in SORNA, and specifically in the 2013 SORNA Amendment, that addresses the extended parole requirements for CES, and we refuse to add such an amendment through the expansion of *Ho*. When a statute's terms have a plain meaning, the court's analysis is at its end. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1743 (2020); *see also Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 185 (1978) ("It is not for us to speculate, much less act, on whether Congress would have altered its stance had the specific events of this case been anticipated."). The 2013 SORNA Amendment's plain wording reveals no effect on the parole statute and has no role in the outcome of this case.

{23}    We take specific issue with the conclusion of the Court of Appeals majority that "[t]here is no principled reason why the Legislature would view SB 735 and SB 528 as irreconcilable for the purpose of SORNA [in 2013, as held by *Ho*] but reconcilable for the purpose of sex offender parole." *Sena*, 2021-NMCA-047, ¶ 24 (first alteration in original) (internal quotation marks omitted). The principled reason to hold the two enactments reconcilable for the purpose of parole is that the parole

requirements are not only a distinct aspect of the SB 735 enactment but, in many ways, are the core of the legislation. We presume that if the Legislature chose to alter this distinct aspect of the SB 735 enactment, it would have done so expressly. *See King v. Burwell*, 576 U.S. 473, 497 (2015) (holding that because the creation of the tax credit was a fundamental purpose of the Affordable Care Act, if Congress intended to limit the provision of tax credits it would have done so expressly).

{24} The United States Supreme Court described the importance of understanding the core policy of legislative enactments as it reviewed an agency decision that loosened filing requirements for new competitors under the common carrier section of the Federal Communications Act. *MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 221 (1994). The Court held that the agency exceeded agency authority, concluding that the rate-filing requirements were "the heart" of the act and that if Congress had intended such an allowance, it would have said so expressly. *See id.* at 229-30, 234 ("For the body of a law, as for the body of a person, whether a change is minor or major depends to some extent upon the importance of the item changed to the whole. Loss of an entire toenail is insignificant; loss of an entire arm tragic. The tariff-filing requirement is, to pursue this analogy, the heart of the common-carrier section of the Communications Act."). The Court reasoned that the filing requirements were "Congress's chosen means of preventing unreasonableness" in

rate charges, so it was unlikely, given the importance of rate monitoring to the purposes of the act, that Congress would have delegated the authority to subtly change the requirements. *Id.* at 230-31.

{25}     Similarly, the parole requirements in the SB 735 enactment are at the heart of the purpose of the amendment which, as outlined in its title, is threefold: to create the offense of CES, to amend registration requirements, and to outline parole requirements for the offense. *See* 2007 N.M. Laws, ch. 68, §§ 1-5 (title). The parole requirements outlined in SB 735 were the Legislature's chosen method of dealing with those who commit CES. *See id.* § 4. Given the importance of the parole requirements in the 2007 enactment, it is unlikely that the Legislature would revoke them through the 2013 SORNA Amendment, a statute that nowhere references sex offender parole terms. Therefore, because we presume that the Legislature deals with major aspects of statutes expressly, we do not construe the 2013 SORNA Amendment to have rendered the parole requirements of the SB 735 enactment ineffective by implication. *Smith*, 2004-NMSC-032, ¶ 22; *Rodriguez v. United States*, 480 U.S. 522, 524 (1987) (citing *Hill*, 437 U.S. at 189) ("[R]epeals by implication are not favored."). We emphasize that legislative intent to repeal a prior statute "'must be clear and manifest.'" *United States v. Borden Co.*, 308 U.S. 188, 198 (1939) (quoting *Red Rock v. Henry*, 106 U.S. 596, 601-02 (1883)). Because

there is no express intent by the Legislature to alter much less repeal the extended parole requirement in Section 31-21-10.1 as it was created in 2007, we disagree with the Court of Appeals analysis concluding that the requirement was implicitly repealed."[8]

{26} Finally, sanctioning an interpretation that the SB 528 enactment comprehensively amended the SB 735 enactment rendering it ineffective is rebutted by the procedural history of the legislation: SB 528 and SB 735 were introduced in the Senate within a week of each other and were passed by the Senate within two days of each other. *See* SB 735 Legislation Actions; SB 528 Legislation Actions. Both SB 735 and SB 528 were passed by the House on the same day and were signed into law by the Governor on the same day. *See* SB 735 Legislation Actions; SB 528 Legislation Actions. An interpretation that the Legislature intended the SB 528 enactment to supersede the SB 735 enactment assumes that the Legislature acted

---

[8]Because the SB 735 enactment was published in the compiler annotations to Section 31-21-10.1 upon its passage in 2007, whereupon the Compilation Commission accordingly recompiled it into statutory text in 2016, CES has required an extended sex offender parole term since 2007. Due process notice requirements were met, and the statute was in effect at the time Defendant committed the crime, and thus Defendant's argument on this point fails. *See Smith*, 2004-NMSC-032, ¶¶ 31-32 (concluding that due process notice requirements were met because the increased penalty provisions in one amendment to the DWI statute were "in force at the time Defendants committed their repeat DWI offenses" and because "all three amendments to [the DWI statute] were noted and printed in the compilation").

21

superfluously in enacting SB 735. Given the improbability of the Legislature undertaking the legislative process to pass a bill and render it ineffective two days later and the lack of any express legislative intent to support this contention, we conclude that the SB 528 enactment did not comprehensively amend the SB 735 enactment, and we give effect to both amendments.

## III.  CONCLUSION

{27}    Applying *Smith*, we conclude that the SB 735 and SB 528 enactments are reconcilable, and we give effect to the parole requirements provided in the SB 735 enactment. The 2013 SORNA Amendment and *Ho* play no role in our analysis. Pursuant to *Smith*, the SB 735 and SB 528 enactments must be read harmoniously because each has distinct purposes, and accordingly, the Court of Appeals should have given effect to both. Therefore, we reverse the Court of Appeals and affirm the sentence of the district court.

{28}    **IT IS SO ORDERED.**

_____
**DAVID K. THOMSON, Justice**

22

**WE CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**BRIANA H. ZAMORA, Justice**